# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Donna J. Henke,

                        Plaintiff,

                                    Civ. No. 09-2999 (RHK/SRN)
                                    **MEMORANDUM OPINION
                                    AND ORDER**

v.

Allina Health System d/b/a Allina
Hospitals & Clinics, *et al.*,

                        Defendants.

---

Stephen M. Knutson, Michelle D. Kenney, Carla J. White, Knutson, Flynn & Deans, P.A., Mendota Heights, Minnesota, for Plaintiff.

H. Le Phan, Paul J. Zech, Felhaber, Larson, Fenlon & Vogt, P.A., Minneapolis, Minnesota, for Defendant Allina Health System d/b/a Allina Hospitals & Clinics.

---

## INTRODUCTION

Plaintiff Donna J. Henke has sued her former employer, Defendant Allina Health System d/b/a Allina Hospital & Clinics ("Allina"), alleging that it terminated her employment in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.*; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; and the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A.01 *et seq.* Presently before the Court is Allina's Motion for Partial Dismissal or, in the alternative, for

Summary Judgment on Counts II, IV, V, and VI of Henke's Amended Complaint.[1]

Allina also seeks an award of attorneys' fees incurred in seeking dismissal of these

"frivolous" claims. For the reasons set forth below, the Motion will be granted in part

and denied in part.

## BACKGROUND[2]

Henke, now 50 years old, commenced her employment with Allina in January

1982. (Am. Compl. ¶¶ 9-10.)[3] In 1986, she was diagnosed with depression, seasonal-

affective disorder, and anxiety disorder with panic attacks. (Id. ¶ 11.) She informed

Allina of these ailments and, with the assistance of prescription medication and

counseling, was able to perform her job duties satisfactorily. (Id. ¶¶ 12, 15.)

In January 2007, Henke transferred to a part-time position as an administrative

assistant to Sharon Carlson, Allina's Director of Patient Care Services. (Id. ¶ 16.) A few

months later, she required a three-month leave for knee surgery. (Id. ¶ 17.) Upon

returning to work, Carlson told her that she appeared unhappy in her position and should

consider looking for another job or retiring. (Id. ¶ 18.) Henke was not unhappy,

however, and she did not seek another position or contemplate retiring from Allina. (Id.)

---

[1] Allina has not sought dismissal of Henke's (1) disability-discrimination claim under the ADA and the Rehabilitation Act (Count I) or (2) age-discrimination claim under the ADEA (Count III).

[2] The facts below describe Henke's version of the relevant events and are taken largely from the allegations in her Amended Complaint.

[3] Neither the Amended Complaint nor the parties' Motion papers indicate what position(s) Henke held during the early part of her tenure with Allina.

Nevertheless, Carlson repeatedly asked how her job search was going, adding to Henke's anxiety level. (Id. ¶ 19; see also Knutson Aff. Ex. A.)[4]

In late 2007, Henke missed work several times due to her psychological problems. (Am. Compl. ¶ 20.) She informed Carlson that she was having "a difficult year" because of her "disability," which was the reason she occasionally missed work. (Id. ¶ 21.) In December 2007, Carlson conducted Henke's annual performance review, which normally took place in February. (Id. ¶ 23.) Henke received an overall rating of "partially/does not meet expectations," due to her "excessive absenteeism." (Id. ¶¶ 23-24.) Henke was surprised by this review, because in at least 21 of the 25 prior years, she had received a performance rating of "exceeds expectations." (Id. ¶ 25.) She asked Carlson to change the rating because she had missed work due to her health problems, but Carlson refused. (Id. ¶ 27.) Henke then signed her review under protest, noting that she had taken time off for health reasons and that she was "disappointed that [her] utilization of [her] PTO hours for medical reasons is being used to penalize [her]." (Id. ¶ 31; Knutson Aff. Ex. A.)

As a result of the negative review, Henke attempted to find another position at Allina. (Am. Compl. ¶ 28.) She applied for and obtained a position as an ophthalmology assistant in Allina's Coon Rapids clinic. (Id. ¶ 29.) She transferred to this position in February 2008. (Knutson Aff. Ex. A.)

On April 9, 2008, Henke was informed that she would be the only ophthalmology assistant working at the clinic from 4:00 pm to 6:30 pm that evening. (Am. Compl. ¶ 33.)

---

[4] As set forth in more detail below, the Court may consider the documents submitted by the parties, including those attached to the Knutson Affidavit, while still considering the Motion under Federal Rule of Civil Procedure 12. (See infra at 6-8.)

Because she did not yet feel adequately trained to work alone, she became extremely anxious and experienced a "severe panic attack"; she was told to go home and another employee covered her evening shift. (Id. ¶¶ 34-35; Knutson Aff. Ex. A.) Following this incident, Henke took a medical leave of absence (lasting approximately four months) and sought additional treatment for anxiety and depression. (Am. Compl. ¶¶ 39, 41.) Allina assigned her an employment counselor during her absence, who informed her that it would fill her position during her leave if it had a pressing need to do so, but in that case would place her in a comparable position upon her return. (Id. ¶ 40.) Allina later informed her that it did, in fact, need to fill her position, but would assist her in locating another position that met her qualifications when she returned to work. (Id. ¶ 42; Knutson Aff. Ex. A.)

Henke later applied for four different positions with Allina, but she did not hear back regarding any of them. (Am. Compl. ¶¶ 43-44.) She then contacted Allina and was informed that she was not being considered for the positions because of the negative performance review she had received from Carlson in December 2007. (Id. ¶ 45.) Shortly thereafter, she checked Allina's website and saw that her prior position as an ophthalmology assistant in the Coon Rapids clinic was listed as available. (Id. ¶ 46.) Upon being cleared by her physician to return to work, she reported to her former job at the clinic. (Id. ¶ 47.) At that time, she was informed that her employment had been terminated because she was "not a good fit" as an ophthalmology associate and was ineligible for a transfer due to the negative review. (Id. ¶ 49; Knutson Aff. Ex. A.)

On October 1, 2008, Henke filed a charge of discrimination with the Minnesota Department of Human Rights ("MDHR"), which was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). (See Phan Aff. Exs. A, H.)[5] In her charge, Henke recited the facts set forth above and asserted that her "disability and [her] age were factors in [Allina's] actions." (Knutson Aff. Ex. A.) She also filled out an MDHR "Intake Questionnaire" in connection with her charge. (Id. Ex. C.) The Questionnaire included a section entitled "Basis of Discrimination," with various boxes for a complainant to check, including "race," "religion," and "gender"; while there was no box labeled "retaliation," there was one labeled "complaints about or opposition to discrimination." (Id.) Henke did not check this box – she checked only the boxes labeled "age" and "disability." (Id.) Similarly, the boxes labeled "age" and "disability," but not "retaliation," were checked on the charge cross-filed with the EEOC. (Phan Aff. Ex. H.)[6]

On May 15, 2009, the MDHR issued a Memorandum finding probable cause that Allina had terminated Henke's employment on the basis of her disability, but not on the basis of her age. (Knutson Aff. Ex. B.)[7] The Memorandum made no specific mention of

---

[5] Minnesota is a "deferral" state, meaning that it has an agency (the MDHR) charged with processing employment-discrimination complaints. Under the MDHR's "workshare" agreement with the EEOC, discrimination claims filed with the former are automatically cross-filed with the latter. See Minn. R. 5000.0400, subp. 2a (2009); Fox v. Thermoform Plastics, Inc., Civ. No. 06-4507, 2007 WL 2376651, at *3-4 (D. Minn. Aug. 16, 2007) (Frank, J.).

[6] Unlike the MDHR questionnaire, the EEOC charge form included a box labeled "retaliation." (Phan Aff. Ex. F.) However, because Henke's EEOC charge was cross-filed by the MDHR, she did not select which boxes to check on that form.

[7] The Memorandum also found probable cause that Allina had failed to accommodate her disability. That determination is irrelevant for present purposes, because Henke does not appear to assert a failure-to-accommodate claim in this case. Although the precise nature of her

a retaliation claim, although it did note that an employer may not "penalize" an employee who has missed work for medical reasons and that such a penalty would "constitute retaliation." (Id.) Following the MDHR's probable-cause finding, Henke withdrew her discrimination charge and filed the instant action, and later amended her Complaint. In that Amended Complaint, she asserts claims of discrimination and retaliation in violation of the ADA, the Rehabilitation Act, the ADEA, and the MHRA.

Allina now moves to dismiss, or in the alternative, for summary judgment on Counts II, IV, V, and VI of the Amended Complaint. It argues that (1) Henke failed to properly exhaust her administrative remedies as to her retaliation claims (Counts V and VI) and (2) her MHRA claims (Counts II, IV, and VI) are untimely. It also seeks attorneys' fees incurred in bringing the instant Motion.

## STANDARD OF DECISION

### I. Dismissal or summary judgment?

Both parties have submitted Affidavits in connection with the instant Motion, attaching several documents thereto. When "matters outside the pleadings are presented to and not excluded by the court" on a motion to dismiss, the motion "shall be treated as one for summary judgment and disposed of as provided in Rule 56[.]" Fed. R. Civ. P. 12(b)(6). As this rule suggests, the Court has discretion not to consider matters beyond

---

disability-discrimination claim is vague – she alleges merely that Allina's conduct "was a willful violation of the ADA and the Rehabilitation Act" without specifying what conduct is at issue (Am. Compl. ¶¶ 52-53) – it appears that her claim is based solely on the termination of her employment. (See id. ¶ 1 ("Plaintiff . . . brings this action . . . seeking equitable and monetary relief for Defendants' termination of her employment . . . ."); Mem. in Opp'n at 14-15 (pointing to her termination to support her claims).)

the pleadings when ruling on a motion to dismiss.  See Casazza v. Kiser, 313 F.3d 414, 418 (8th Cir. 2002).  Yet, certain extraneous materials are not considered "outside the pleadings" under this rule, including items "necessarily embraced by" the pleadings, Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999), matters mentioned or incorporated by reference therein, Fed. R. Civ. P. 10(c); Kushner v. Beverly Enters., Inc., 317 F.3d 820, 831 (8th Cir. 2003), and public records, Faibisch v. Univ. of Minn., 304 F.3d 797, 802 (8th Cir. 2002).

Here, except for two documents irrelevant to the vitality of Henke's claims,[8] the Court may consider all of the documents attached to the Affidavits without applying summary-judgment standards, because they are either embraced by the Amended Complaint or are public records.  The attached documents include the MDHR and EEOC charges of discrimination, the MDHR's probable-cause Memorandum, and documents concerning the withdrawal of the charges prior to filing suit.  Each is expressly referenced in the Amended Complaint.  (See Am. Compl. ¶ 9.)  The only remaining document attached is Henke's Intake Questionnaire, which is a public record that may be considered on a motion to dismiss.  See Faibisch, 304 F.3d at 802-03; Mandel v. M&Q Packaging Corp., No. 3:09-CV-42, 2009 WL 2579308, at *3 (M.D. Pa. Aug. 18, 2009).

As for the *averments* in the Affidavits, most do not address the merits of Henke's claims, but rather concern the back-and-forth between counsel prior to (and after) filing

---

[8] These are (1) the Affidavit of Service for Henke's Complaint (Phan Aff. Ex. E) and (2) a letter between counsel (id. Ex. F).  The former is irrelevant to the Court's analysis and will not be considered, while the latter is relevant only to Allina's request for attorneys' fees, for which the Court is not constrained by Rule 12.

the instant Motion, as discussed in more detail below. Because those averments are cited only to support or refute Allina's request for fees, the Court may consider them without converting the Motion.[9]

## II.     The motion-to-dismiss standard

In <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), the Supreme Court set forth the standard to be applied when evaluating a motion to dismiss under Rule 12(b)(6). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 570. Stated differently, a plaintiff must plead sufficient facts "to provide the 'grounds' of his 'entitle[ment] to relief,' [which] requires more than labels and conclusions, and [for which] a formulaic recitation of the elements of a cause of action will not do." <u>Id.</u> at 555 (citation omitted). Thus, a complaint cannot simply "le[ave] open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." <u>Id.</u> at 561 (citation omitted). Rather, the facts set forth in the complaint must be sufficient to "nudge[] the[] claims across the line from conceivable to plausible." <u>Id.</u> at 570.

When reviewing a motion to dismiss, the complaint must be liberally construed, assuming the facts alleged therein as true and drawing all reasonable inferences from those facts in the plaintiff's favor. <u>Id.</u> at 555-56. A complaint should not be dismissed simply because a court is doubtful that the plaintiff will be able to prove all of the factual allegations contained therein. <u>Id.</u> Accordingly, a well-pleaded complaint will survive a

---

[9] There is one notable exception: Henke's Affidavit, which contains averments related to the preparation of her Intake Questionnaire. The Court declines to consider those averments which, even if considered, would not alter its analysis.

motion to dismiss even if it appears "that a recovery is very remote and unlikely."

Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

## ANALYSIS

### I. Exhaustion

The crux of Allina's Motion is that Henke's retaliation claims have not been properly exhausted. (See Def. Mem. at 7-11.) The Court agrees, but only in part.[10]

#### A. Exhaustion generally

Before filing a lawsuit alleging retaliation in violation of the ADA, the Rehabilitation Act, or the ADEA, a plaintiff must exhaust her administrative remedies by filing a charge with the EEOC. See, e.g., Ballard v. Rubin, 284 F.3d 957, 964 n.6 (8th Cir. 2002) (Rehabilitation Act); Randolph v. Rogers, 253 F.3d 342, 347 n.8 (8th Cir. 2001) (ADA); Philipp v. ANR Freight Sys., Inc., 61 F.3d 669, 676 (8th Cir. 1995) (ADEA). Doing so gives the EEOC "the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts." Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 222 (8th Cir. 1994). Because the EEOC cannot investigate a claim about which it has not been notified, an administratively unalleged claim will be deemed unexhausted, meaning it cannot be asserted in a subsequent lawsuit. E.g., Harlston v. McDonnell Douglas Corp., 37 F.3d 379, 382 (8th Cir. 1994). To "[a]llow[] a complaint to

---

[10] The retaliation claims are (1) Count V, which alleges retaliation in violation of the ADA, the Rehabilitation Act, and the ADEA, and (2) Count VI, which alleges retaliation in violation of the MHRA. The Court's analysis is limited to Count V because, as set forth below, Henke has conceded that her MHRA claims, including Count VI, should be dismissed. (See infra at 17.)

encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge." Wallin v. Minn. Dep't of Corr., 153 F.3d 681, 688 (8th Cir. 1998) (quoting Williams, 21 F.3d at 223).

However, the employment-discrimination laws are remedial in nature, and courts therefore must construe administrative charges "liberally in order to further the[ir] remedial purposes." Dorsey v. Pinnacle Automation Co., 278 F.3d 830, 838 (8th Cir. 2002); accord, e.g., Nichols v. Am. Nat'l Ins. Co., 154 F.3d 875, 886-87 (8th Cir. 1998); Cobb v. Stringer, 850 F.2d 356, 359 (8th Cir. 1988) (charges "must be interpreted with the utmost liberality"). For this reason, it has been repeatedly recognized that a plaintiff may "seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." Nichols, 154 F.3d at 887; accord, e.g., Wedow v. City of Kan. City, Mo., 442 F.3d 661, 672 (8th Cir. 2006); Duncan v. Delta Consol. Indus., Inc., 371 F.3d 1020, 1025 (8th Cir. 2004). Simply put, courts "do not require that subsequently-filed lawsuits mirror the administrative charges." Id. Yet, courts must be careful not to read administrative charges *too* broadly – "there is a difference between liberally reading a claim [that] 'lacks specificity,' and inventing, *ex nihilo*, a claim [that] simply was not made." Id. (citation omitted).

### B.    Exhaustion here

In this case, there is no dispute that Henke filed a charge with the EEOC that did not expressly allege retaliation. (See Mem. in Opp'n at 10 ("Henke does not dispute that she did not specifically allege retaliation as an additional basis of discrimination in her

Charge.").)  That is the end of the matter, according to Allina, because Henke cannot save her retaliation claims by arguing they are "reasonably related" to her discrimination claims.  (See Def. Mem. at 10 ("It is well established that retaliation claims are not reasonably related to underlying discrimination claims.").)  This argument, however, overlooks that a retaliation claim may be related to the *substance* of an administrative charge even if not reasonably related to a discrimination *claim* in that charge.  See Foster v. Roberts Dairy Co., LLC, 372 F. Supp. 2d 1165, 1173 (D. Neb. 2005) (rejecting a *per se* rule that "a retaliation claim may never be reasonably related to an administrative charge").

Russell v. TG Missouri Corp., 340 F.3d 735 (8th Cir. 2003), is instructive.  There, the plaintiff had marked the "sex" and "disability" boxes on her EEOC charge, but did not mark the box labeled "retaliation."  Id. at 740.  The Court of Appeals recognized that the plaintiff's disability-discrimination *claim*, standing alone, was insufficient to exhaust her retaliation claim, because "retaliation claims are not reasonably related to underlying discrimination claims."  Id. at 747-48.  Yet, the court did not end its analysis there. Instead, it proceeded to "consider whether Russell's retaliation claim is reasonably related to, or grows out of, the *statement* in the administrative charge: 'I believe Respondent wanted to fire me because I could only work 8 hours a day, 5 days a week due to my condition.'"  Id. at 748 (emphasis added).  Hence, while the court held that a retaliation claim cannot be reasonably related to a discrimination claim, it made clear that the exhaustion analysis is not that simple.  Rather, the question is whether the entire text of the charge, and not simply the boxes checked or the claims alleged therein, provides

"sufficient notice of [a] retaliation claim." Id.; accord, e.g., Wallace v. DTG Operations, Inc., 442 F.3d 1112, 1123 (8th Cir. 2006) ("The information contained in an EEOC charge must be sufficient to give the employer notice of the subject matter of the charge and identify generally the basis for a claim, but it need not specifically articulate the precise claim or set forth all the evidence an employee may choose to later present in court."). Put simply, it is the substance that matters. Nichols, 154 F.3d at 886 (claim alleged must relate to the "*substance* of the allegations in the administrative charge") (emphasis added).

Here, it is a close call whether the substance of Henke's charge sufficed to exhaust her ADA and Rehabilitation Act retaliation claims. Nevertheless, given the liberality with which her charge must be construed, the Court concludes that those claims have indeed been exhausted. The charge alleges that Henke informed Carlson she needed to miss work because of her disability, and then complained when she received a negative review due to "excessive absenteeism." (Knutson Aff. Ex. A.) She expressly noted that she had missed time at work for health reasons and felt that she was being "penalize[d]" as a result. (Id.) The charge further stated that once her medical leave ended, she was unable to obtain a new position at Allina, or return to her old position, because of Carlson's negative review – in other words, the negative review was a direct cause of her termination. Under these circumstances, the charge sufficiently alluded to Henke (1) engaging in protected activity (requesting accommodation for her disability) and (2) suffering an adverse employment action as a result (the negative review and subsequent termination based thereon). These are the elements of a *prima facie* case of

retaliation under the ADA and the Rehabilitation Act.  See, e.g., Thomas v. Corwin, 483

F.3d 516, 530 (8th Cir. 2007).[11]  Accordingly, the charge provided sufficient notice of an

ADA/Rehabilitation Act retaliation claim, despite not invoking the term "retaliation."

See, e.g., Jones v. United Parcel Serv., Inc., 502 F.3d 1176, 1187 (10th Cir. 2007)

(retaliation claim exhausted where, *inter alia*, text of EEOC charge described conduct

underlying both disability-discrimination and disability-retaliation claim, without

specifically alleging retaliation); Morris v. David Lerner Assocs., __ F. Supp. 2d __,

2010 WL 274361, at *5 (E.D.N.Y. Jan. 26, 2010) ("[W]hen the EEOC charge alleges

facts from which a reader can infer a link between protected activity – for example, a

complaint about perceived discriminatory treatment – and a subsequent adverse

employment action, a retaliation claim asserted in a subsequent lawsuit will be

'reasonably related' to the EEOC charge.") (collecting cases); see also Hawkins v.

Counseling Assocs., Inc., 504 F. Supp. 2d 419, 435 (E.D. Ark. 2007) (plaintiff could

assert disability-discrimination claim despite stating in the EEOC charge only that she

believed she was discriminated against on basis of race, since charge explained plaintiff's

medical issues and how defendant allegedly failed to accommodate them).

Allina argues that Henke's claims are unexhausted because the Eighth Circuit has

"considerably narrowed [its] view of what is 'like or reasonably related' to . . . originally

filed EEOC allegations."  (Reply Mem. at 4 (quoting Wedow, 442 F.3d at 672).)  But

Allina misreads Wedow.  The plaintiff in Wedow, unlike Henke, asserted that retaliation

---

[11] Claims under the Rehabilitation Act are analytically indistinct from claims under the ADA.
E.g., Allison v. Dep't of Corr., 94 F.3d 494, 497 (8th Cir. 1996).

had occurred *after* filing an EEOC charge. In earlier decisions, the Eighth Circuit had noted that retaliation claims in such circumstances were reasonably related to underlying charges of discrimination. Id. at 673 (noting that, "at one time, [a] judicial exception to the exhaustion doctrine permitted a finding that a *subsequent* retaliation claim growing out of an EEOC [charge] was sufficiently related to be within the scope of the lawsuit") (emphasis added). But support for this rule collapsed after the Supreme Court's decision in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), which held that discrete acts of discrimination constitute separately actionable employment practices. In light of Morgan, our Court of Appeals recognized that retaliation occurring subsequent to an EEOC charge could not be "reasonably related" to the charge itself, because such conduct was separately actionable and, hence, required its own exhaustion. It is for this reason that the Court of Appeals "narrowed" its earlier view of what is reasonably related to an EEOC charge. Wedow, 442 F.3d at 672-73; see also Jones, 502 F.3d at 1186 (following Morgan, "each discrete incident of alleged discrimination or retaliation constitutes its own unlawful employment practice for which administrative remedies must be exhausted") (internal quotation marks and citation omitted).

In the Court's view, this "narrowed" rule is inapplicable here. Henke is not attempting to assert retaliation claims based on acts that occurred *after* filing an EEOC charge. Indeed, she did not file her charge until after her employment with Allina had ended. Rather, the basis for her retaliation claims is the same as her underlying discrimination claims and was spelled out, albeit somewhat inarticulately, in her charge. Accordingly, the claims are exhausted. See Graham v. Bryce Corp., 348 F. Supp. 2d

1038, 1042 (E.D. Ark. 2004) (suggesting that retaliation occurring at same time as discrimination would be exhausted as long as plaintiff alleged "facts that would give notice of this claim").

Pointing to Warwas v. Jos. A. Bank Clothiers, Inc., Civ. No. 00-2010, 2001 WL 586725 (D. Minn. May 29, 2001) (Frank, J.), Allina asserts that neither the MDHR nor the EEOC construed Henke's charge to allege a claim for retaliation. (See Def. Mem. at 10.) But that assertion is not entirely accurate. Although mentioned obliquely, the MDHR's probable-cause finding suggests that the agency recognized a retaliation component to Henke's charge. (See Phan Aff. Ex. G (noting that employers cannot "penalize" employees for missing work due to disabilities and that such penalties "constitute retaliation").) Moreover, Warwas recognized that an agency's interpretation of a charge is not dispositive. 2001 WL 586725, at *3. Indeed, were it otherwise, a plaintiff's claim could be deemed unexhausted even when asserted in an EEOC charge, if the agency happened to overlook the claim and failed to investigate it. Clearly that is not the law. E.g., Jones, 502 F.3d at 1185 ("[A] plaintiff should not be penalized for the EEOC's negligence in handling a charge."); Forehand v. Fla. State Hosp. at Chattahoochee, 89 F.3d 1562, 1570-71 (11th Cir. 1996) ("[A]ny deficiency in the EEOC's performance of its duties should not adversely affect a plaintiff's right to sue."); Downes v. Volkswagen of Am., Inc., 41 F.3d 1132, 1139 (7th Cir. 1994) (same).

At bottom, the Court concludes that Henke's charge was "sufficient to give [Allina] notice of the" ADA and Rehabilitation Act retaliation claims and "identif[ied]

generally the basis for [such] claim[s]." Wallace, 442 F.3d at 1123. Accordingly, the claims are exhausted and Allina's Motion as to these claims will be denied.

With respect to the ADEA retaliation claim, the Court reaches a different conclusion. Unlike the claims based on her disability, there is simply nothing in the EEOC charge suggesting that Henke was intending to assert an age-based retaliation claim. Indeed, there is nothing in the charge indicating that she even engaged in "protected activity" under the ADEA, the first step in asserting a retaliation claim under that statute. See, e.g., Trammel v. Simmons First Bank of Searcy, 345 F.3d 611, 615 (8th Cir. 2003) (ADEA protected activity is conduct that "oppose[s] age discrimination"); Jeseritz v. Potter, 282 F.3d 542, 548 (8th Cir. 2002) ("Protected activity is 'an informal or formal complaint about, or other opposition to, an employer's practice or act.'") (citation omitted). The Court fails to understand Henke's assertion that she "engaged in protected activity when she did not take Carlson's pointed suggestion of retirement or to look for another job." (Mem. in Opp'n at 18.) No reasonable person would view that action as "opposition" to age discrimination, even assuming that Carlson's suggestion was unlawful. See, e.g., Van Orden v. Wells Fargo Home Mortgage, Inc., 443 F. Supp. 2d 1051, 1060-61 (S.D. Iowa 2006) ("opposition" under Eighth Circuit law includes filing a charge of discrimination, making internal complaints or informal complaints to superiors, or "expressing a belief that [an] employer has engaged in discriminatory practices").

For these reasons, the Court concludes that Count V should be dismissed, but only insofar as it alleges a retaliation claim under the ADEA.

## II. The MHRA claims

Allina next argues that Henke's MHRA claims (Counts II, IV, and VI) are time-barred. Henke has not responded to Allina's arguments, and hence these claims will be dismissed. The only remaining issue is whether that dismissal should be with or without prejudice. Some background facts are important:

In December 2009, Allina's counsel wrote Henke's counsel, pointing to court decisions indicating that the MHRA claims were time-barred. (See Plan Aff. Ex. F.) In light of this authority, Allina's counsel asked that the MHRA claims be dismissed. (Id.) Receiving no response, the instant Motion was filed. (Id. ¶ 6.) Only after the Motion was filed did Henke's counsel respond, agreeing to dismiss the MHRA claims, but without prejudice. (Kenney Aff. ¶¶ 2-3.) When Allina's counsel asked why the dismissal should be without prejudice, Henke's counsel declined to answer. (Id. ¶ 3.) Allina then decided to press forward with the instant Motion. In her Memorandum, Henke has nowhere explained why the MHRA claims should be dismissed without prejudice.[12] Moreover, the Court has reviewed Allina's arguments and concludes that they are well-founded – the MHRA claims clearly are time-barred. For these reasons, the claims will be dismissed with prejudice.

---

[12] Only when pressed by the Court at oral argument did Henke finally offer an explanation, making a somewhat unclear assertion about the statute of limitations being tolled by her commencement of this action. Regardless, the issue was rendered moot when counsel conceded that Henke does not intend to re-file these claims.

## III.   Fees

Finally, Allina seeks an award of attorneys' fees incurred in bringing the instant Motion.  (See Def. Mem. at 14-17.)  That request will be denied.

Allina correctly notes that the Court may award attorneys' fees to a prevailing defendant in a discrimination action.  (See id. at 14-15 (citing Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978)).)  Yet, Allina has not demonstrated that it is a prevailing defendant at this juncture.  At most, it has succeeded in narrowing the issues in this case by securing the dismissal of some, but not all, of Henke's claims.  By contrast, Christiansburg was decided only after the plaintiff's case had been dismissed *in its entirety*.  "Generally speaking, 'status as a prevailing party is determined on the outcome of the case as a whole, rather than by piecemeal assessment of how a party fares on each motion along the way.'"  Emery v. Hunt, 272 F.3d 1042, 1047 (8th Cir. 2001) (citation omitted).  It would create an anomalous situation indeed if the Court were to deem Allina a prevailing defendant at this juncture, only to have Henke later succeed at trial on her remaining claims.  See, e.g., Aerotech Res., Inc. v. Dodson Aviation, Inc., 237 F.R.D. 659, 661 (D. Kan. 2005) ("[O]nly one party may be classified as the prevailing party.").

Moreover, as Allina acknowledged at oral argument, fees under Christiansburg are to be awarded to defendants "only sparingly."  EEOC v. L.B. Foster Co., 123 F.3d 746, 751 (3rd Cir. 1997); accord, e.g., Williams v. City of Carl Junction, Mo., 523 F.3d 841, 843 (8th Cir. 2008) ("A prevailing defendant . . . is entitled to attorney's fees only in very narrow circumstances.") (internal quotation marks and citations omitted).  To obtain such fees, a prevailing defendant must show that the plaintiff's claims were "frivolous,

unreasonable, or groundless." Id.  That is certainly not true of at least some of the claims at issue here – namely, the ADA and Rehabilitation Act retaliation claims, which have survived Allina's Motion.  And in the Court's view, at least one of the now-dismissed claims – the ADEA retaliation claim – was not so lacking in foundation as to justify an award of fees.  See Hughes v. Rowe, 449 U.S. 5, 15-16 (1980) (fact that court dismissed plaintiff's claim insufficient, standing alone, for fee award).[13]

Allina next seeks its fees as a sanction under 28 U.S.C. § 1927, which provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  For the reasons discussed above, the Court concludes that an award of fees under Section 1927 is unwarranted with respect to the retaliation claims.   The MHRA claims, by contrast, are more troubling.

Asserting a clearly time-barred claim has been held sufficient to justify the imposition of sanctions under Section 1927, particularly where the untimeliness has been laid bare to the plaintiff.  See, e.g., Fred A. Smith Lumber Co. v. Edidin, 845 F.2d 750, 752-54 (7th Cir. 1988); Williams v. White Castle Sys., Inc., 526 F. Supp. 2d 830, 834 (M.D. Tenn. 2007); Boykin v. Bloomsburg Univ. of Pa., 905 F. Supp. 1335, 1347 (M.D. Pa. 1995).  Here, the inescapable conclusion is that Henke's counsel knew full well that the MHRA claims were time-barred, yet persisted in pressing them.  Counsel first did not

---

[13] Regardless, the Eighth Circuit has recognized that the ADEA, unlike the ADA, "does not provide for the payment of attorney's fees to a prevailing defendant."  Newhouse v. McCormick & Co., 130 F.3d 302, 304 (8th Cir. 1997).

respond to the December 2009 letter citing ample case law indicating the MHRA claims were untimely. Then, <u>after</u> Allina filed its Motion, counsel finally consented to the dismissal of those claims but *without prejudice*, and then flatly refused to offer any explanation why the claims should not be permanently dismissed. And in response to the instant Motion, counsel proffered no explanation why the claims are not time-barred. Simply put, the circumstances here suggest that Henke's counsel continued to assert the MHRA claims despite knowing that they could not stand. The Court, therefore, concludes that it would be justified in awarding fees as a sanction.

Nevertheless, the Court declines to do so at this time. Although Allina incurred some fees in seeking the dismissal of these claims, they were dismissed early in the case, likely before either party endeavored to obtain related discovery. <u>See, e.g.</u>, <u>Reeves v. Dauphin County</u>, Civ. No. 1:06-1534, 2008 WL 2054006, at *1 (M.D. Pa. May 13, 2008) (declining to award fees under Section 1927 incurred in addressing time-barred claims where claims were dismissed early in litigation). Moreover, the MHRA claims were but one piece of Allina's Motion. The Motion would have been filed – albeit in shorter form – even if Henke had agreed to dismiss those claims with prejudice. Any "multiplication" of the proceedings, therefore, has been minimal.

Moreover, Allina has failed to document its requested fees (which total nearly $11,000). In fact, Allina informed the Court of the total amount of fees sought only when it filed its *Reply*, and it has not submitted timesheets or other documents to support the reasonableness of its request. <u>See, e.g.</u>, <u>Tillman v. New Line Cinema Corp.</u>, No. 05 C 910, 2008 WL 5427744, at *10 (N.D. Ill. Dec. 31, 2008) (court may reduce fees sought

under Section 1927 when the "fee petition is vague or inadequately documented"); <u>see generally</u> <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 437 (1983) ("the fee applicant bears the burden of . . . documenting the appropriate hours expended and hourly rates" and should "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims").

However, while the Court has opted not to exercise its discretion to award fees, Henke's counsel should not view that decision as a tacit endorsement of their conduct. Attorneys are required to assess the merits of their claims before signing any pleading or other document filed with the Court.  Fed. R. Civ. P. 11(b).  The Court is left with the distinct impression that such an assessment was not made here.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Defendant's Amended Motion for Partial Dismissal or, in the Alternative, for Partial Summary Judgment (Doc. No. 9) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1.     The Motion is **GRANTED** to the extent it seeks dismissal of Henke's MHRA claims (Counts II, IV, and VI of the Amended Complaint (Doc. No. 3)), and those claims are **DISMISSED WITH PREJUDICE**;

2.     The Motion is **GRANTED** to the extent it seeks dismissal of Henke's ADEA retaliation claim (part of Count V of the Amended Complaint), and that claim is **DISMISSED WITH PREJUDICE**; and

3.    In all other respects, the Motion is **DENIED**.[14]


Date:  March 12, 2010

                                    s/Richard H. Kyle
                                    RICHARD H. KYLE
                                    United States District Judge

---

[14] The Court strongly urges the parties to attempt to resolve this matter, with or without the assistance of Magistrate Judge Nelson, before undertaking what is likely to be protracted and expensive discovery.